O’NIELL, O. J.
 

 This is a suit on a verbal contract for services rendered by the plaintiff as a trainer of race horses. The suit was for $3,435 as the balance due, but the plaintiff entered a remittitur for $600. He sued W. A. Shea and James J. White, Jr., averring that they were the joint owners of the horses that he was employed to train and were therefore liable in solido for the services he had rendered. Shea resides in New York and White in Massachusetts. An attachment was levied
 
 on three of the
 
 horses, which were released to Shea on a forthcoming bond. White pleaded that he was not properly cited, and the suit against him was dismissed. The plaintiff did not appeal from the judgment dismissing the suit as to White.
 

 The evidence leaves considerable doubt as to who owned the horses when the attachment was levied, but that seems to be of little or no importance now, since White is out of the case, and Shea, by taking possession as owner of the horses on the forthcoming bond, has subjected himself personally to the jurisdiction of the court. Rathbone v. The London, 6 La. Ann. 439; Love v. Voorhies, 13 La. Ann. 550; Williams v. Gilkeson-Sloss Commission Co., 45 La. 1013, 13 So. 394; Hollingsworth v. Atkins, 46 La. 530, 15 So.
 
 77;
 
 First National Bank v. Johnson, 130 La. 288. 57 So. 930.
 

 The district court gave judgment against Shea for $1,985, from which he took a suspensive appeal, and White having yet an interest in the matter took a devolutive appeal.
 

 Shea admits that the contract of employment was made on the 7th of May, 1921, at the Jamaica Race Track, at Long Island, N. Y., and that the employment continued until the 10th of October, 1922, when plaintiff was discharged in New Orleans. The horses were to be entered and run—and were in fact entered and run—in the name and under the colors of the '“Shea Stable” at the race tracks throughout the country, particularly in New York, Maryland and Louisiana. The plaintiff alleges—and the evidence in his behalf sustains the allegation—that the agreement was that he was to receive a salary of $200 per month, and that Shea was to bet $100 for plaintiff’s account on any horse selected by plaintiff, belonging to the Shea Stable, at any time that the plaintiff, believing that any particular horse was going to win, might request that the bet be made for his account and at his risk. Shea admits that he agreed to pay the salary of $200 per month, but denies the obligation with regard to the bets. He contends that, in making the contract of employment, he was acting for and as the president and manager of a corporation styled “Shea Stables, Inc.” He produced and annexed to his depositions a copy of the charter of such a corporation, domiciled in New York and composed of himself, his wife and one Helen A. Shea. The evidence in the case leaves no doubt that the plaintiff was ignorant of the existence of such a corporation, and that Shea contracted with him, not as if Shea represented a corporation or any one else, but for himself.. Shea was therefore personally bound by the contract of employment. .As .to thé terms and
 
 *987
 
 conditions of the contract, the district court found that there was a preponderance of the evidence in favor of the plaintiff, and we find no reason to reverse his judgment in that respect.
 

 The reason why the district judge reduced the plaintiff’s claim from $2,835 to $1,-985 is that, of the amount won on the bets, $S50 was won on a race in New York, iii which state, it is admitted, betting on horse races is forbidden and contracts for or on account of money or property bet or wagered on horse races are void. It is not so in Maryland or in Louisiana, in which states other bets were made. Our conclusion, however, is that the judgment appealed from must be reduced to $1,518, because of other bets that were made and won in the state of New York. It is admitted by the defendant Shea that the plaintiff earned in salary, for the 18 months of his employment, $3,600. The winnings on the bets made for plaintiff’s account amounted to $3,120; but four of the winnings, ¿ggregating $1,410, were made in New York; and, as to them, it is conceded that the contract is not valid or enforceable. Two of the winnings, amounting to $1,460, were made in Maryland, and one for $250 was made in New Orleans; and, as to those winnings, amounting to $1,710, the contract is valid. Adding the $1,710 to the $3,600 of salary earned, the plaintiff was entitled to $5,310. The defendant Shea testified that he had paid plaintiff $3,792 and produced 18 cheeks that were paid to plaintiff, ranging in amounts from $50 to $1,000 each, some issued by him and some by his wife, and aggregating $3,792. Deducting that amount from the $5,310 that was legally due to plaintiff leaves Shea indebted to him for the balance of $1,-518.
 

 The judgment appealed from is amended 'by reducing the principal sum from $1,985 to $1,518, and, as thus amended, the judgment is • affirmed. The defendant Shea is to pay the costs incurred in the district court, and the plaintiff the costs of appeal.