MEHLE v. McLEAN

(February 15, 1932. Opinion and Decree.)
(March 21, 1932. Rehearing Refused.)
(April 25, 1932. Writs of Certiorari and Review Refused by Supreme Court.)

Harold Moise, of New Orleans, attorney for plaintiff, appellant.

Jos. M. Jones, of New Orleans, attorney for defendant, appellee.

WESTERFIELD, J. This is a suit for $105.30 on a dishonored check. The defense is that the check was not supported by valuable consideration, being the result of a transaction contra bonos mores.

There was judgment below in favor of defendant, and plaintiff has appealed.

The check sued on was issued in payment of a bet on a race horse. David A. McLean, who issued the check and whose legal representative is made defendant in this suit, McLean having died shortly after issuing the check, was a member of the veterinary firm of McLean & Karstendieck. Plaintiff placed a bet with McLean, through an employee, on a horse by the name of Sidney, which was entered in a race scheduled to be run on some eastern track. Sidney won the race, and McLean promptly drew his check in payment of the wager and sent it to Mr. Mehle, the plaintiff, who indorsed it over to a Mrs. C. B. Crisler in settlement of an obligation. When Mrs. Crisler deposited the check, it was returned with the notation, "Party deceased." Mehle thereupon took up the check and made demand upon Mrs. David A. McLean, the widow of the maker of the check, individually and as administratrix of his succession. Mrs. McLean declined to pay the check, and this suit resulted.

Article 2983 of the Civil Code reads as follows:

"The law grants no action for the payment of what has been won at gaming or by a bet, except for games tending to promote skill in the use of arms, such as the exercise of the gun and foot, horse and chariot racing.
"And as to such games, the judge may reject the demand, when the sum appears to him excessive."

This article is a compound of articles 1965 and 1966 of the Code Napoleon. Similar provisions are found in the Code of Justinian and the writings of Paulus.

" 'Praeter quam si quis certet' followed by Paulus' commentary upon the wagers permitted, 'quad virtutis causa fiat,' indicates that the senatus consultum forbade betting except with a contestant. Three hundred years after Paulus' time, Justinian dropped out of the law spear and javelin contests, inserted horsemanship and legalized bets made by anyone on the result. After reciting the antiquity of gambling and the sin, poverty and waste of time resulting therefrom, Justinian forbids all gaming in private houses and in public buildings and places, and even that any person shall be a looker-on at such games. He provides that no action shall lie to recover a wager, and differing from our law, that the loser and his heirs shall have the right, barred only by the prescription of fifty years, to recover the money paid to the winner. From these provisions, however, he · makes five exceptions: jumping, pole-vaulting, foot-racing, a sort of gladiatorial contest called perichyte and horsemanship, but limits to one solidus the amount recoverable from the latter, 'ut casum gravem non sustineat'; and he makes it a condition to any recovery that the gains have been 'sine dolo atque callidis machinationibus' or, in the language of the track, 'you mustn't fix the jockey or dose the horse.'

"The Roman law makes illegal all wager contracts, except those specifically named. Our law and the French law declares that the exceptions enumerated are illustrative only, nonetheless the compilers of the Code Napoleon have preserved the meaning **and** spirit of the Senatus consultum: 'Les jeux propres à exercer au fait des armes * * * et * * * qui tiennent à l'addressee et à l'exercise du corps.' The language of our Code, 'games tending to promote skill in the use of arms,' expresses only a part of Paulus' 'virtutis causa.'

"Article 2983 properly modernized 'certet hasta vel pilo jaciendo' into 'the exercise of the gun,' but the substitution by our Code and by the Code Napoleon of the special terms 'horse and chariot racing' for the general term 'hippice' (horsemanship) is inaccurate, and not an improvement.

"Justinian set a definite limit to the sum recoverable under a wager contract; our Code and the Code Napoleon while naming no sum as a limit, have preserved the spirit of Justinian's decree, 'ut casum ·gravem non sustineat,' by providing, 'and as to such games, the judge may reject the demand when the sum appears to him excessive.' " Robert H. Marr, Tulane Law Review, June, 1930.

Our Constitution provides that "gambling is a vice and the Legislature shall pass laws to suppress it." This provision is first found in the Constitution of 1879 (article 172) and repeated in the Constitution of 1898 (article 188) and 1921 (article 19, sec. 8).

It is contended that the effect of this provision of the Constitution is to repeal article 2983 to the extent that any gambling contract is excepted because it is a pronouncement of the public policy of the state. No enabling legislation is necessary, it is said, because all laws inconsistent with the declared public policy of the state are void and contracts with inconsistent objects unenforceable because contra bonos mores.

In Shreveport v. Maloney, 107 La. 193, 31 So. 702, decided in 1901, long subsequent to the adoption of the constitutional article a city ordinance by the city of Shreveport designed to suppress pool rooms was held invalid because a municipality cannot punish an offense not denounced as such by the Legislature. Marksville v. Worthy, 123 La. 432, 49 So. 11. The court there said:

"There is no law on the statute books which makes betting on horse races as carried on by the turf exchanges a public wrong. It cannot be held to come within the terms of the article cited above for the very plain reason that the article is not operative proprio vigore. The legislature has not deemed proper to carry out its mandate. Until it takes action, the article cited must remain without effect. To the legislature alone the power is delegated of legislating against gambling. * * *

"In another case, to which we are referred by plaintiff, the evidence satisfied the court that the act which the municipality sought to suppress came within the definition of a lottery, and was, for that definite

reason, repugnant to the policy of the state; and, besides, the municipality was seeking, to enforce a statute of the state adopted to prohibit the particular game denounced as gambling. New Orleans v. Collins, 52 La. Ann. 976, 27 So. 532.

"We have no hesitation in saying that the law denouncing lotteries (article 178 of the constitution) is in force, for it is not limited as is article 188 of the constitution against gambling. It (article 178, Const. 1898) announces the policy of the state as being against lotteries, and makes it an act repugnant to the peace and good order.

"The business of the defendants has never been considered a lottery, and, as conducted, it is not a lottery. The basis of the business of turf exchanges is the running of horses and the betting on the result. To an extent, at least, these acts have received legal sanction, as expressed in one of the articles, of the Civil Code (article 2983). The right to recover a bet on the result of a horse race has been recognized."

In Bain v. Grillot, 6 La. App. 825 (in which case a writ of review was denied by the Supreme Court), following the Maloney case, we held:

"A bet on a horse race has been recognized as a lawful obligation in this state for more than a century. [Citing authorities.]"

Under Act No. 57 of 1908 and Act No. 127 of 1920 the operation of a betting book or a French mutual pooling device is denounced and penalty provided. A feeble suggestion is made that McLean operated a betting book, but it has completely failed of establishment in the record, so we do not have to consider this feature of the law.

A contention is also made that under the article of the Code only such bets are permitted as tend to promote "skill in the use of arms, such as the exercise of the gun and foot, horse and chariot racing." This contention could hardly have been made if the article of the Code had been carefully read, because it is not required

that the bet should promote skill in horse and chariot racing, but, in denying a right of action for gambling transactions in general, an exception is made in favor of such bets as are placed upon the games tending to promote skill, etc. In other words, it is not the bet but the game. Betting is allowed on horse races because the law favors horse racing and not because it favors betting.

In the Maloney case, supra, we find the following:

"The contention is that the betting made under the conditions here has no tendency to promote and develop fine horses, as the betting is made on races run at distant places in the country, where no race or horse is ever seen by the parties who put up their bets. If horse racing, which in itself has nothing offensive to public morals, as plainly indicated by the cited article, supra, is made the means to carry on betting, which is nothing but gambling, it should receive the attention of the legislature, as directed by article 188 of the constitution."

In the Bains case, supra, the wager was made within the inclosure of a race track upon a horse running at that track and in earlier cases by the owners on the horses themselves. Grayson v. Whatley, 15 La. Ann. 525; St. Ceran v. Sherman, 18 La. Ann. 520; Vititoe v. Shea, 161 La. 984, 987, 109 So. 785; Moore v. Johnston, 8 La. Ann. 488, but we can discover no difference in principle. As long as article 2983 is in the Code, bets may be made and collected upon horse races, no matter where the race is run, or who owns the horse, the constitutional provision notwithstanding.

For the reasons assigned, the judgment appealed from is reversed, and it is now ordered that there be judgment in favor of plaintiff, Allen Mehle, and against defendant, Mrs. David A. McLean, in the full sum of $105.30, with legal interest from the 19th day of August, 1929, until paid, and for all costs.