VIOSCA, Justice Ad Hoc.
By resolution dated August 8, 1953, the Louisiana State Racing Commission approved the application for license and granted permission to Magnolia Park, Inc., to conduct a Harness Racing Meeting for sixty-six days in the Parish of Jefferson, beginning Monday, March 15, 1954, and ending May 31, 1954.
On September 30, 1953, twenty-two real estate owners and taxpayers in Jefferson Parish filed this injunction suit' in the Civil District Court for the Parish of Orleans against the Louisiana State Racing Commission, officially domiciled in Orleans Parish, and its individual members, and against Magnolia Park, Inc., also domiciled in Orleans Parish. Three of these petitioners were St. Martin’s Episcopal Church, St. Martin’s Protestant Episcopal School, and Bridgedale Baptist Church; all Louisiana corporations. Thereafter, on October 19, 1953, forty-seven additional home owners or property owners in Jefferson Parish filed a petition of intervention, joining the original plaintiffs.
Plaintiffs and intervenors, hereinafter referred to as plaintiffs, alleged that Sections 148, 153, 156 and 159 of Title 4 of the LSA-Revised Statutes,, under which thq commission issued the license, are unconstitutional *52 as violating Article 19, Section 8 of the Louisiana Constitution of 1921, LSA, both because they authorize rather than suppress gambling and because betting on harness races, with the use of pari-mutuel machines, constitutes á lottery. They further alleged that the operation of the proposed track would constitute a nuisance in fact in that their property and homes would be depreciated in value by the proposed illegal operation of the track in the vicinity of their homes, and that the operation of the track at night would interfere with the peace, quiet, enjoyment and value of their homes and property.
Plaintiffs prayed for a mandatory injunction to the Louisiana State Racing Commission, directing it to revoke the license granted to Magnolia Park, Inc.; and further prayed that temporary and permanent injunctions issue against the Louisiana State Racing Commission, and its members, and against Magnolia Park, Inc., prohibiting, respectively, the permitting and conducting of pari-mutuel and handbook wagering in the vicinity of their homes.
The defendants filed exceptions of no right and no cause of action and prematurity, which exceptions were overruled by the district judge, but with reservation of the right to re-urge these exceptions after a hearing of the evidence.
The defendants thereafter filed their answers in which they admitted that Magnolia Park, Inc., proposed to begin operation of its night horse racing plant on March 15, 1954) in Jefferson Parish. They further admitted that pari-mutuel wagering would be conducted at the track in connection with: the running of the horses as authorized by the Louisiana State Racing Commission;. They contended that Sections 141 to 161 of.' Title 4 of the LSA-Revised Statutes, which: legalize this type of wagering are constitutional, and that the operation of the track; with pari-mutuel betting could not and' would not be a nuisance per se or a nuisance, in fact.
At the time of the trial of the rule for preliminary injunction, it was established: that Magnolia Park, Inc., had leased for ten: years, beginning September 18, 1953, with, option to purchase, a certain tract of land' adjoining and directly west of Green Acres; Subdivision (where a majority of the plaintiffs and intervenors lived or owned! property); and it was further established! that the racing track, with grandstand, was-then in the process of construction at an expenditure in excess of $2,000,000; that public racing was to commence on March 15„ 1954, with eight races each night, six nights-of the week, from 8 P.M. until midnight;: and that the racing area would include parking space for 4,560 automobiles, with a stable area for the accommodation of 600 horses and space for trailers used in the-transportation of the horses.
The district judge after hearing this rule-for a preliminary injunction, dismissed the application as of nonsuit. Plaintiffs took a devolutive appeal from this judgment. *54 They also applied to this court for writs of •certiorari, mandamus and prohibition on the basis that the appeal would not be adequate. This application was denied by this •court.
Thereafter, a trial on the merits was had in the district court, and all parties re-offered the same evidence which was taken ■on the trial of the rule for a preliminary injunction. The district judge rendered judgment in favo'r of defendants, dismissing the demands of plaintiffs as of non-suit. An appeal was taken from this judgment and by stipulation the two appeals have been consolidated in this court.
In this court plaintiffs make the following contentions:
1. That pari-mutuel wagering on harness races is gambling in violation of Article 19, Section 8 of the Louisiana Constitution of 1921 and in violation of LSA-R.S. 14:90, and that LSA-R.S. 4:148, 153, 156 .and 159 are unconstitutional.
2. That pari-mutuel wagering on harness races constitutes a lottery in viólation of Louisiana Constitution, Article 19, Section 8, and in violation of LSA-R.S. 14:90.
3. That, accordingly, the operation of the Harness Racing Meeting by Magnolia Park, Inc., constitutes a nuisance per se.
Plaintiffs have abandoned the contention that the operation of these races will constitute a nuisance in fact. In dismissing that contention in district court, the district judge held that the demand of plaintiffs in this respect was premature in that the track was not then in operation. His ruling was based upon our decision in Frederick v. Brown Funeral Homes, 222 La. 57, 62 So. 2d 100, wherein we held that the establishment and operation of a business not prohibited by law cannot be enjoined as a nuisance in fact prior to its operation. Nothing in the decree of the district court or in our decree herein will preclude plaintiffs from bringing proceedings to abate the nuisance should these races, after the track is in operation, be so conducted as to constitute a nuisance in fact.
Article 19, Section 8 of the Louisiana Constitution of 1921 provides:
“Gambling is a vice and the Legislature shall pass laws to suppress it.
“Gambling in futures on agricultural products or articles of necessity, where the intention of the parties is not to make an honest and bona fide delivery, is declared to be against public policy; and the Legislature shall pass laws to suppress it.
“Lotteries and the sale of lottery tickets are prohibited in this State.”
From a mere reading of this Article it is obvious that the first provision, declaring that gambling is a vice and that the Legislature shall pass laws to suppress it, is not self-executory. In the absence of any legislation there is no prohibitory law on the subject.
*56 This is likewise true of the second provision of the section, declaring that gambling in futures on agricultural products or articles of necessity, under certain conditions, is against public policy; and that the Legislature shall pass laws to suppress it.
The third provision of the section, dealing with lotteries and the sale of lottery tickets, is, however, self-executory; and it does constitute a prohibitory law on the subject, although legislation in support of this provision is necessary in order to make lotteries and the sale of lottery tickets criminal offenses.
The statutes which the Legislature has adopted under its power to pass laws to suppress gambling, and which are now in force, and pertinent to this case, are LSA-R.S. 4:141 to 4:161, LSA-R.S. 14:90, and LSA-Civil Code, Article 2983.
LSA-R.S-. 14:90 provides as follows :
“Gambling is the intentional conducting, or directly assisting in the conducting, as a business, of any game, contest, lottery, or contrivance whereby a person risks the loss of anything of value in order to realize a profit.
“Whoever commits the crime of gambling shall be fined not mo're than five hundred dollars, or imprisoned for not more than one year, or both.”
This statute prohibits gambling as a business but does not prohibit gambling between individuals.
LSA-R.S. 4:141 to 4:161, inclusive, create the Louisiana State Racing Commission, define its powers and duties, authorize it to prescribe rules and regulations under which shall be conducted all horse races upon which there is wagering, give it control generally over the conduct of all race meetings conducted in the State of Louisiana, and provide for license fees, commissions and taxes.
LSA-R.S. 4:148 provides:
“The commission may prescribe rules and regulations under which shall be conducted all horse races upon the results of which there is wagering. The commission shall make rules governing, permitting, and regulating the wagering on horse races under the form of mutuel wagering by patrons, known as the ‘pari-mutuel wagering’ and the ‘bookmaking form of wagering,’ both of which methods are legal. Only those persons receiving a license from the commission may conduct these types of wagering, and shall restrict these forms of wagering to a space within the race meeting grounds. All other forms of wagering on the result of horse races are illegal, and all wagering on horse races outside the enclosure where horse races have been licensed by the commission is illegal.” (Italics ours.)
*58 LSA-R.S. 4:159 provides in part:
“No person shall directly or indirectly hold any horse race meeting with mutuel pools or pools making wagering on the results, without having first procured a license. No person shall wager upon the results of a horse race, except in the pari-mutuel or mutuel method of wagering or book-making method of wagering when the same is conducted by a licensee and upon the grounds or enclosure of the licensee.”
Article 2983 of the LSA-Civil Code reads as follows:
“The law grants no action for the payment of what has been won at gaming or by a bet, except for games tending to promote skill in the use of arms, such as the exercise of the gun and foot, horse and chariot racing. (Italics ours.)
“And as to such games, the judge may reject the demand, when the sum appears to him excessive.”
LSA-R.S. 14:90 and LSA-R.S. 4:-141 to 4:161 must be construed together, as they are part of one legislative act. Guillot v. Nunez, 225 La. 301, 72 So.2d 513; State ex rel. Fudickar v. Heard, 223 La. 127, 65 So.2d 112; Babineaux v. Lacobie, 222 La. 45, 62 So.2d 95; Chappuis v. Reggie, 222 La. 35, 62 So.2d 92.
In State ex rel. Fudickar v. Heard, supra [223 La. 127, 65 So.2d 114] we held:
“It is to be remembered that the Revised Statutes constitute a single act' of the Legislature, adopted as a whole; different sections' should be regarded not as separate acts, but as simultaneous expressions of the legislative will, and all provisions should be construed together and reconciled whenever possible. * * *”
We further pointed out in that case that in adopting the LSA-Revised Statutes of 1950, the Legislature in incorporating therein the various sections gave equal dignity to each.
It is not difficult to construe LSA-R.S. 14:90 and LSA-R.S. 4:141 to 4:161 together and to reconcile them. LSA-R.S. 14:90 refers to gambling as a business in general; LSA-R.S. 4:141 to 4:161 refers to wagering on races in particular. LSA-R.S. 4:141 to 4:161 constitute an exception to the general rule stated in LSA-R.S. 14:90.
Unless the provisions of LSA-R.S. 4:141 to 4:161 are unconstitutional the defendant, Magnolia Park, Inc., has a right to conduct its harness racing meeting, and plaintiffs are not entitled to the injunction which they seek.
We shall first consider the contention of plaintiffs that betting on horse races with the use of pari-mutuel machines constitutes a lottery. If that contention is well founded, the provisions of LSA-R.S. 4:141 to 4:-161 are unconstitutional and the proposed operation of ¡ a harness racing track with^ betting would be illegal and a nuisance per *60 se. That is so because the last paragraph of Article 19, Section 8 of the Constitution prohibiting lotteries and the sale of lottery tickets is self-operative and prohibitory in character without the necessity of enabling legislation.
Lottery has been defined as a scheme for the distribution of prizes by lot or chance. It is upon that theory that this court has held slot machines, pinball machines and bank nites lotteries within the meaning of certain state statutes and city ordinances. State v. Barbee, 1937, 187 La. 529, 175 So. 50; City of New Orleans v. Collins, 1900, 52 La.Ann. 973, 27 So. 532; State v. Lasselle, 1923, 154 La. 168, 97 So. 389. In a horse race the winner is not determined by chance alone, as the condition, speed and endurance of the horse, and the skill and management of the rider are factors affecting the result of the race. The better has the opportunity to exercise his judgment and discretion in determining the horse on which to bet. In City of Shreveport v. Maloney, 1902, 107 La. 193, 31 So. 702, 703, this court considered the very question raised by plaintiffs under an identical Article (178) of the Constitution of 1898. In that case we said:
“ * * * We have no hesitation in saying that the law denouncing lotteries (article 178 of the constitution) is in force, for it is not limited, as is article 188 of the constitution against gambling. It (article 178, Const. 1898) announces the policy of the state as being against lotteries, and makes it an act repugnant to the peace and good order. The business of the defendants has never been considered a lottery, cmd, as conducted, it is not a lottery. The basis of the business of turf exchanges is the running of horses and the betting on the result. To an extent, at least, these acts have received legal sanction, as expressed in one of the articles of the Civil Code (article 2983). The right to recover a bet on the result of a horse race has been recognized. * * * ”
(Italics ours.)
See also Mehle v. McLean, 19 La.App. 425, 139 So. 681.
A vast majority of common law jurisdictions have reached a similar result. It is not necessary to review all of those cases here. It is sufficient to refer to Rohan v. Detroit Racing Ass’n, 1946, 314 Mich. 326, 22 N.W.2d 433, 438, 166 A.L.R. 1246, which discusses this problem at length and reviews the common law authorities. The provision of the Michigan Constitution under consideration was subtantially similar to the provisions of our Constitution. Article 5, Section 33 of the Constitution of Michigan provided that “ 'the legislature shall not authorize any lottery nor permit the sale of lottery tickets.’ ” In ruling that pari-mutuel betting on horse races is not a lottery the court said:
“We are convinced that under the great weight of authority, pari-mutuel betting on horse races is not a lottery. Webster’s New International Diction *62 ary (2d Ed.) defines a lottery as follows :
“ ‘A scheme for the distribution of prizes by lot or chance; * * * a scheme by which one or more prizes are distributed by chance among persons who have paid or promised a consideration for a chance to win them, usually as determined by the numbers on tickets as drawn from a lottery wheel.’
“Said dictionary defines pari-mutuel as ‘a form of betting on horses in which those who bet on the winning horse share the total stakes, less a small per cent to the management.’ It describes a pari-mutuel machine as ‘a machine for registering and indicating the number and nature of bets made on horse races, used in the pari-mutuel system of betting.’ ”
After reviewing the common law authorities, the opinion finally states:
“Under the above authorities it is clear that pari-mutuel betting on a horse race is not a lottery. In a lottery the winner is determined by lot or chance, and a participant has no opportunity to exercise his reason, judgment, sagacity or discretion. In a horse race the winner is not determined by chance alone, as the condition, speed, and endurance of the horse and the skill and management of the rider are factors affecting the result of the race. The better has the opportunity to exercise his judgment and discretion in determining the horse on which to bet. The pari-mutuel method or system of betting on a horse race does not affect or determine the result of the race. The pari-mutuel machine is merely a convenient mechanical device for recording and tabulating information regarding the number and amount of bets (Utah State Fair Ass’n v. Green, supra [68 Utah 2S1, 249 P. 1016]), and from this information the betting odds, on the horses entered can be calculated and determined from time to time during the process of betting. The recording and tabulating of bets could be done manually by individuals, but the parimutuel machine is a more convenient and faster method. The fact that a better cannot determine the exact amount he may win at the time he places his bet, because the odds may change during the course of betting on a race, does not make the betting a mere game of chance, since the better can exercise his reason, judgment, and discretion in selecting the horse he thinks will win. Horse racing, like foot racing, boat racing, football, and baseball, is a game of skill and judgment and not a game of chance. Utah State Fair Ass’n v. Green, supra.
“Therefore, we conclude that Act No. 199, Pub.Acts 1933, authorizing parimutuel betting on horse races, does not violate the constitutional prohibition against lotteries.”
*64 We conclude, therefore, that the provisions of LSA-R.S. 4:141 to 4:161 are not unconstitutional on the ground that they authorize the operation of a lottery in violation of Article 19, Section 8 of the Constitution.
We shall next consider the contention of plaintiffs that LSA-R.S. 4:141 to 4:161 are unconstitutional as authorizing gambling in violation of the first paragraph of Article 19, Section 8 of the Constitution of 1921. This paragraph is identical with Article 188 of the Constitution of 1898.
The first case involving wagering on horse races, arising after the adoption of the Constitution of 1898, and construing Article 188, was City of Shreveport v. Maloney, 1902, 107 La. 193, 31 So. 702. In that case this court had before it for consideration a charge made against defendants for violating a city ordinance of the City of Shreveport prohibiting turf exchanges. In holding that the power to enact laws suppressing gambling was vested exclusively in the Legislature and not in the municipalities of the state or the courts, and that Article 188 of the Constitution of 1898 was not self-operative, this court said:
“At the outset we will state that the issues are confined to horse races and the bets to which they give rise. * * * Plaintiff points to article 188 of the constitution of 1898 as containing the authority to suppress gambling, and as being the prohibitory law which enabled the municipality to adopt the ordinance to which we have before referred. The power, as we think, was delegated to the legislature, and under no principle of .construction can it be made to read so as to embrace within its terms the different municipalities of the state as having the power to suppress any act as gambling not denounced as gambling by the legislature. There is no law on the statute books which makes betting on horse races as carried on by the turf exchanges a public wrong. It cannot be held to come within the terms of the article cited above for the very plain reason that the article is not operative proprio vigore. The legislature has not deemed proper to carry out its mandate. Until it takes action, the article cited must remain without effect. To the legislature alone the power is delegated of legislating against gambling. * * * The basis of the business of turf exchanges is the running of horses and the betting on the 'result. To an extent, at least, these acts have received legal sanction, as expressed in one of the articles of the Civil Code (article 2983). The right to recover a bet on the result of a horse race has been recognized. * * * If horse racing, which in itself has nothing offensive to public morals, as plainly indicated by the cited article, supra, is made the means to carry on betting, which is nothing but gambling, it should receive the attention of the legislature, *66 as directed by article 188 of the constitution. We can only say here, in conclusion, that an offense is an act prohibited, and that the act which plaintiff seeks to prohibit is not prohibited by statute. * * * the evil is one for legislative concern. This particular function belongs to another branch of the government. It requires legislative action; whilst upon us it devolves to write, and not to enact, the law.”
After the adoption of Act 57 of 1908, commonly known as the Locke Act, which prohibited certain types of betting on horse races, one, Truxillo, was charged with accepting bets on harness races within a certain enclosure on the South Louisiana Fair Grounds at Donaldsonville. . A demurrer to the bill of information was filed alleging that the type of betting detailed in the bill of particulars was not covered by the Locke Act. The demurrer was sustained by the lower court (Judge LeBlanc, now Justice of this court). This .court refused a writ on the ground that the judgment was correct. Talbot v. Truxillo, No. 27,326 of the Docket of this court, unreported.
In State v. Austin, 1917, 142 La. 384, 76 So. 809, 810, this court in dismissing an information charging defendant with making an individual bet on horse races pointed out that the Locke Act did not prohibit individual betting. The court among other things said: ,
“* * This is the mode adopted by the '.Louisiana. Legislature to pro- . hibit gambling on horse races in the state of Louisiana.”
By Act 127 of 1920, the Legislature in exercising its power to suppress gambling placed its stamp of approval on betting and wagering conducted within the confines of a track or enclosure wherein horse races actually take place. In upholding the constitutionality of this Act, this court in the case of State v. Mustachia, 1922, 152 La. 821, 94 So. 408, 409, speaking through Justice Dawkins as its organ, said:
“The statute is not local, for it applies to the entire state, and it does not confer any special privilege upon any one, for any person, firm, or corporation is at liberty to own and operate a race track, upon complying with the law. Nor does it discriminate against any one, for betting may be indulged in by any person, provided it be done within the inclosur.e of a race track.
“The law in question is merely an exercise on the part of the state of the police power, which it undoubtedly possesses, to prohibit betting or gambling.
The Constitution declares that:
“ ‘Gambling is a vice and the Legislature shall pass laws to suppress it.’ Section 8, art. 19, Constitution 1921; article 188, Const.1913.
“It is true that the Legislature has not entirely prohibited gambling; but the greater includes the less, and,’ to the extent which it has been penalized, the lawmaking;-.bq(jy’s .power has not. *68 been exceeded. The provision is not' self-operating, and gambling is a crime' only to the extent to which the Legislature has declared it so. While it is further true that the word ‘suppress’ is equivalent to prohibit, put down, .or end by force (Ogden v. City of Madison, 111 Wis. 413, 87 N.W. 568, 55 L.R.A, 506; Schwuchow v. City of Chicago, 68 Ill. 444; Words and Phrases, vol. 8, p. 6807, verbo ‘Suppress’), and the Legislature might not license any sort of gambling, yet,, until it penalizes any given act, -there is no law under which its commission may be-punished.”
See also State v. Scheffield, 1909, 123 La. 271, 48 So. 932, 934, wherein this court said:
“The act prohibited in the statute relates to gambling and to ‘betting books’ and to horse races to the extent only that they come within the gambling denounced by the statute. * * * ”
Since the adoption of the Constitution of 1921, the Court of Appeal for the Parish of Orleans in two instances had occasion to consider the legality of bets on horse races and the effect of Article 19, Section 8 of the Constitution of 1921 upon LSA-Civil Code Article 2983.
In Bain v. Grillot, 1927, 6 La.App. 825, the Court of Appeal for the Parish of Orleans in a case in which this court unanimously refused writs on the ground that the judgment was correct (Docket No. 28,-686), held that betting on a horse race is not'prohibited by law, and mo'ney won on such a bet may be recovered in a cml action. In the course of its opinion the court said :
“The following is Article 188 of the Constitution:
“ ‘Gambling is a vice, and the legislature shall pass laws to suppress it.’
* * *
“It cannot be held to come within the terms of the article cited above for the very plain reason that the article is not operative ‘proprio vigore’. The legislature has not deemed proper to carry out its mandate. Until it takes action the article cited must remain without effect.”
Again, in the case of Mehle v. McLean, 1932, 19 La.App. 425, 139 So. 681, 683, the Court of Appeal for the Parish of Orleans, through' Judge Westerfield as its organ, made the same ruling. The court reviewed the history of horse racing and betting thereon from the days of the Roman Law. It concluded:
“ * * * As long as article 2983 is in the Code, bets may be made and collected upon horse races, no .matter where the race is run, or who owns the horse, the constitutional provision notwithstanding.” (Italics ours.)
Again this court unanimously refused a writ on the ground that the judgment was correct (Docket No. 31,844). Of course, the judgment could not be correct .if Article 2983 of the LSA-Civil Code, a legislative *70 enactment, violated Article 19, Section 8 of the Constitution and was unconstitutional;
Plaintiffs rely upon State v. Barbee, 187 La. 529, 175 So. 50, and Giamalva v. Cooper, 217 La. 979, 47 So.2d 790. In State v. Barbee this court had before it for consideration a game of chance in violation of the lottery law. In discussing Act No. 5 of the First Extra Session of 1935 relative to license taxes .the court said [187 La. 529, 175 So. 57]:
“The present Constitution of 1921 makes it the mandatory duty of the Legislature to suppress gambling as a vice, and prohibits -lotteries and the sale of lottery tickets in this State.
“If Act No. 5 of the First Extra Session of 1935 may be construed as permitting the license of lotteries in this State, this act would he clearly unconstitutional as to such license, as it would have been passed in violation of a prohibitory law.
“It is not possible under the Constitution and laws of this State to license gambling as a lawful occupation, nor is it possible to license the operation of a lottery as a lawful occupation.”
It is undoubtedly true that the Act in question would be clearly unconstitutional if it attempted to license a lottery as a lawful occupation, since the constitutional provision condemning lotteries is self-executory. The statement that it is not possible under the constitution and laws of this state to license g'ambling other than lotteries as a lawful occupation was not necessary to a decision in the case.
Giamalva v. Cooper, supra; involved a suit brought by authority of Act 330 of 1938 for the refund of $100 which'appellant paid under protest to the Collector of Revenue as an occupational tax under Section 20(d) of Act 15 of the Third Extra' Session of 1934, as amended by Act 6 of 1948, on the ground that Act 15 of the Third Extra Session of 1934, as amended, is inimical- to Section 8 of Article 19 of the Constitution. The Act itself, however, provided that “Payment of the license tax imposed by this subsection shall not be held to legalize the operation of any machine or device defined herein which is prohibited by law.” This court held that [217 La. 979, 47 So.2d 792]:
“ * * * The statute, considered in any of its aspects, cannot be regarded either as legalizing or otherwise fostering gambling.”
Here again the court was concerned with a slot machine, which has been held to be a lottery.
While the instant case is the first case that has arisen under LSA-R.S. 4:141 to 4:161, it is nevertheless obvious that the issues involved herein have already been disposed of under identical provisions of the Constitution of 1898, as well as under the provisions of the present Constitution. When the constitutional convention of 1921 readopted Article 188 of the Constitution *72 of 1898'as'paragraph l'of Article T9, Section 8 of the Constitution of 1921, it obviously was aware of the prior decisions of this court which held that Article 188 of the Constitution of 1898 was not self-operative, that the power to pass laws on this subject was vested exclusively in the Legislature and that the Legislature had full discretion to determine when, where and how gambling should be suppressed or permitted. It is significant that two of the justices of this court in 1921 were members of that convention, one of whom, Justice Dawkins, one year later, wrote the opinion in State v. Mustachia, supra, and the other of whom, Justice Overton, eleven years later, joined in the denial of writs in Mehle v. McLean, supra. Two of the justices sitting on the present case were likewise members of that convention.[1] If the convention was not in accord with the interpretations placed upon Article 188 of the Constitution of 1898 by this court, it would undoubtedly have changed these provisions and made the first paragraph of Article 19, Section 8 of the Constitution of 1921 self-operative.
We re-affirm our previous rulings that the provision in Article 19, Section 8 of the Constitution of 1921, reading “Gambling is a vice and the Legislature shall pass laws to suppress it”, is not self-operative, that there is delegated to the Legislature, and to the Legislature alone, the power to suppress gambling, and to determine how, when, where, and in what' respects gambling shall be prohibited-or permitted. We ■further hold that LSA-R.S. 4:141 to 4:161 are not unconstitutional as violative of Article 19, Section 8 of the Constitution of 1921.
As the proposed Harness Racing Meeting which the Louisiana State Racing Commission has authorized and licensed, and the defendant Magnolia Park, Inc., proposes to operate, with pari-mutuel betting, is not prohibited by law, and is accordingly not illegal, it is not a nuisance per se; and plaintiffs are not entitled to the injunction which they seek.
The district judge dismissed plaintiffs’ demands as in case of nonsuit. As we have finally determined the issues in this case, the dismissal should be without qualification.
For the reasons assigned, the judgments and decrees of the district court are' amended so as to strike therefrom the words “as in the case of nonsuit”, and as thus amended-the judgments are affirmed.
McCALEB, J., recused.

. Justice' Moise and the author of this opinion.