CHEHARDY, Chief Judge.
This is a suit for the return of 13 antique slot machines seized by the State Police in a 1987 gambling raid on a Knights of Columbus “Las Vegas Night” charitable fund-raising event. The Department of Public Safety (i.e., the State Police) has appealed from a judgment ordering the return of the slot machines to the plaintiff. The plaintiff has answered the appeal, seeking $625 for damages the machines allegedly sustained while in the custody of the State Police.
FACTS
The plaintiff, Burnis Alexander, is a collector of antique coin-operated devices whose collection includes many antique slot machines. In 1986, members of the Knights of Columbus, Council 2409, of Lul-ing, Louisiana (hereafter called “KC”), asked him to rent six of his slot machines to the group for the KC’s annual Italian Festival, which features “Las Vegas Night” gambling activities, all to raise money for charitable purposes. Although Alexander had never rented out his machines before, he consented after being assured by various persons that the KC’s activities were legal.
The slot machines were such a success at the 1986 festival that the KC decided to rent more machines for the 1987 festival. Alexander delivered 13 machines to the KC hall in Luling, where several St. Charles Parish deputies working private security details for the festival helped him to unload and set up the machines. In addition to the slot machines there were a roulette wheel, dice tables, and blackjack tables.
On the night of May 8, 1987, the first night of the festival, the State Police received a telephone complaint about the gambling at the festival. Trooper Mark Básele was assigned to investigate the matter. Upon arriving at the KC hall, he observed several dice tables and a row of slot machines, all in active use by patrons of the festival. After inquiries to the member in charge of the festival, he discovered the KC had no charitable gaming license, so he informed them the gambling operation would have to be shut down. To avoid alarming patrons of the festival, he agreed to wait until the festival closed for the night.
He contacted his superiors, who ordered him to confiscate the slot machines. The roulette wheel, blackjack tables and dice tables were not confiscated, however, because the Department wanted to try to work with the organization to find a way to make the other materials legal, by making them work as raffles rather than as gambling machines. No citations were issued to anyone, nor were any arrests made in connection with the seizure of the slot machines.
*646 Following the raid on the slot machines, a KC representative contacted Lieutenant Emile Bourgoyne, Director of the Division of Charitable Gaming Control of the State Police, who advised them to apply for a gaming license pursuant to the Charitable Raffles, Bingo and Keno Licensing Law (LSA-R.S. 33:4861.1, et seq.). The KC applied for the license on May 11,1987 — after their Italian Festival had ended — and the license was issued to them on May 20, 1987, retroactive to May 8, 9 and 10, 1987, the dates on which the festival had taken place.
Despite the issuance of the license and the absence of any prosecutions for unlawful gambling, the State Police refused to return the slot machines to Mr. Alexander, who ultimately filed this suit to get the machines back.
ACTION OF THE TRIAL COURT
In ruling in the plaintiffs favor, the trial court made the following findings:
(1) That the Knights of Columbus, Council 2409, is a properly qualified nonprofit charitable organization;
(2) That the Knights of Columbus Hall is a “private dwelling” within the scope of the use of that term in LSA-R.S. 15:31.1;
(3) That the Italian Festival conducted by the KC on May 8, 9 and 10, 1987, was an exempt activity within the scope of LSA-R.S. 14:90.2(B);
(4) That the Department of Public Safety’s issuance of the license retroactive to the dates of the festival “cloaked the event * * * with validity”;
(5) That there was no unlawful or illegal gambling conducted at the festival and that the slot machines were seized illegally by the State Police;
(6) That, even if there was probable cause for the State Police to seize the slot machines, the retroactive issuance of the license mandated the return of the slot machines and any coinage removed from them to the rightful owners;
(7) That the KC would not have engaged intentionally in an illegal act in connection with the festival;
(8) That the plaintiff is a bona-fide collector of antique slot machines and would not have rented or allowed the use of the machines unless he was convinced the KC were a charitable organization with appropriate authority to use the slot machines;
(9) That the continued seizure of the slot machines and coinage was improper after a determination was made that there would be no prosecution;
(10) And, finally, that the plaintiff failed to carry his burden of proving the State Police caused damage to the slot machines.
ISSUES ON APPEAL
On appeal, the Department of Public Safety asserts the only issue is “whether antique slot machines, if removed from legal shelter or operated, are contraband.”
Under LSA-R.S. 15:31(A), all law enforcement officers are authorized and commanded “to confiscate and immediately destroy all gambling devices or machines used for gambling that come to their attention,” except for devices in the possession of certain designated persons, such as licensed manufacturers or sellers. Devices in the possession of such authorized persons may be confiscated, however, if being used for “unlawful gambling activities.” The term “gambling device” includes “any slot machine.” LSA-R.S. 15:31(B).
LSA-R.S. 15:31.1, however, exempts antique slot machines from confiscation or destruction under certain circumstances. The statute provides “a slot machine is an antique if at least twenty-five years have elapsed since it was manufactured” and makes the following exceptions to the taboo on slot machines.
An antique slot machine may be owned and possessed in this state without being subject to confiscation or destruction except by court judgment, but the machines may be seized as evidence “when operated for unlawful gambling purposes.” R.S. *647 15:31.1(B). An antique slot machine seized as evidence may not be destroyed or sold “until a court determines by a final and definitive judgment that such slot machine was operated for unlawful gambling * * *. Otherwise, if the judgment is in favor of the owner, such antique slot machine shall be returned to its owner.” R.S. 15:31.1(C).
Under Subsection D of R.S. 15:31.1, however, “[a]n antique slot machine may be displayed only in private dwellings or while offered for sale by a licensed retail dealer * * *. If a slot machine is displayed in any other manner, it shall not be subject to the provisions of Subsections B and C.” (Emphasis added.)
In summary, although any slot machine is contraband and subject to seizure pursuant to R.S. 15:31, under R.S. 15:31.1 a slot machine is protected from confiscation or destruction if (1) it was manufactured at least 25 years ago; (2) it is displayed either in a private dwelling or while offered for sale by a licensed retail dealer who is not licensed to sell alcoholic beverages; and (3) if it is not operated for unlawful gambling purposes.
The Louisiana Criminal Code makes two types of gambling unlawful:
LSA-R.S. 14:90 prohibits “the intentional conducting, or directly assisting in the conducting, as a business, of any game, contest, lottery, or contrivance whereby a person risks the loss of anything of value in order to realize a profit.” (Emphasis added.)
LSA-R.S. 14:90.2(A) prohibits gambling in public, which is defined as “the aiding or abetting or participation in any game, contest, lottery, or contrivance, in any location or place open to the view of the public or the people at large, such as streets, highways, vacant lots, neutral grounds, alleyway, sidewalk, park, beach, parking lot, or condemned structures whereby a person risks the loss of anything of value in order to realize a profit.” (Emphasis added.)
R.S. 14:90.2(B), however, states, “This Section shall not prohibit activities authorized under the Charitable Raffles, Bingo and Keno Licensing Law, nor shall it apply to bona fide fairs and festivals conducted for charitable purposes." [1]
Thus, R.S. 14:90 and 14:90.2 prohibit gambling only if it is conducted as a business or done in public places for nonchari-table purposes. See, e.g., Gandolfo v. Louisiana State Racing Commission, 227 La. 45, 78 So.2d 504 (1954); State v. Young, 457 So.2d 205 (La.App. 2 Cir.1984). Any gambling not within the scope of those statutes is allowed.
On appeal, the Department of Public Safety contends that the trial court erred placing the slot machines under the protection of R.S. 15:31.1(B) and (C) by finding that the KC hall was a “private dwelling” and that there was no unlawful or illegal gambling conducted at the festival. The Department asserts the KC hall was not a “private dwelling” in any usually-understood meaning of the word.
In response, the plaintiff contends the trial court properly concluded that the KC hall is a “private dwelling,” because it is the “residence or abode” of a juridical person, a private fraternal organization. In addition, the plaintiff asserts that the issuance of the retroactive charitable gaming license authorized the group to hold raffles, under R.S. 33:4861.4, and that a slot machine is simply a mechanized form of raffle.
We agree with the trial court’s ruling that the Italian Festival was a bona fide fair conducted for charitable purposes. The KC did not conduct gambling as a business; the net proceeds were not for the benefit of the organization but were for charitable purposes. The festival’s status as a bona fide charitable fair and the issuance of the charitable gaming license placed the festival within the ambit of Sub *648 section B of R.S. 14:90.2, exempting operators of charitable festivals from prosecution for gambling in public. As noted above, no prosecution was ever instituted as a result of the raid here. We conclude, thus, that no unlawful gambling took place at the festival.
The designation of slot machines as gambling devices and the treatment of them as contraband by R.S. 15:31 are not dependent on a finding of illegal gambling, however. See State v. Madere, 400 So.2d 665 (La.1981). The exception made by R.S. 15:31.1 for antique slot machines turns on display of a machine within the confines described in that statute — as applied here, in a “private dwelling.”
State Representative Charles Bruneau Jr., who was one of the authors of the bill which enacted R.S. 15:31.1, testified on behalf of the plaintiff. Representative Bru-neau stated that “private dwelling,” as used in the statute, was intended to refer to any type of dwelling that is neither a public dwelling, a public building nor public facility. We find his testimony, as one of the authors of the legislation, most persuasive.
Both the Luling KC hall and the land on which it is located are owned by the Knights of Columbus, Council 2409, which is a private organization, and all activities and meetings of Council 2409 take place there. Council 2409 is a properly-chartered nonprofit charitable organization. Such entities are recognized under the law as persons having a domicile, which in this case is the KC hall on Lagarde Drive.
In addition, an overview of the statutes related to gambling, gambling devices, and games of chance convinces us that the Legislature has evinced an intent to make allowances and exceptions to the general laws prohibiting gambling, when such activities are operated or performed under the auspices of charitable organizations for charitable purposes. See, e.g., LSA-R.S. 4:10.5 and 14:90.2(B).
Considering these reasons, we conclude the district court did not err in finding that the seizure of the slot machines was illegal.
Finally, regarding the answer to the appeal, we find no manifest error in the trial court’s ruling that the plaintiff failed to carry the burden of proving the slot machines were damaged while in the custody of the State Police.
For the foregoing reasons, the judgment of the district court is affirmed.
AFFIRMED.

. The Charitable Raffles, Bingo and Keno Licensing Law, R.S. 33:4861.1-33:4861.21, permits the governing bodies of parishes and municipalities to license bona fide veterans, charitable, educational, religious or fraternal organizations, civic and service clubs to hold, operate and conduct charitable games of chance, specifically raffles, bingo, keno and pull-tabs, as defined in the statutes.