(97 South. 389)

No. 26021.

### STATE v. LASSELLE et al.

(June 11, 1923.)

*(Syllabus by Editorial Staff.)*

1. Lotteries ⬡⟹3—Any scheme for distribution of prizes by chance held a "lottery."

Act No. 169 of 1894, § 1, penalizing any one setting up or running a lottery, uses the word "lottery" in its ordinary sense, as defined by lexicographers, and the common law, and as including any scheme for distribution of prizes among those paying for the privilege of betting, dependent on chance.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Lottery.]

2. Lotteries ⬡⟹3—Game in which bets made on number which will be flashed by electrical device held a "lottery."

Though number on which light is flashed in a so-called flashlight game depends somewhat on proficiency of player operating electrical devise, where others than the operator are permitted to play by betting on the number which will be flashed, the game constitutes a "lottery."

3. Lotteries ⬡⟹3—Statute not limited to lotteries of state-wide operation.

Act No. 169 of 1894, § 1, penalizing any one setting up or running a lottery, is not limited in its application to lottery schemes of state-wide operation.

Appeal from Criminal District Court, Parish of Orleans; N. E. Humphrey, Judge.

C. Lasselle and others were convicted of operating a lottery, and they appeal. Affirmed.

Arthur Landry, of New Orleans, for appellants.

A. V. Coco, Atty. Gen., Robert H. Marr, Dist. Atty., of New Orleans (T. S. Walmsley, of New Orleans, of counsel), for the State.

DAWKINS, J. Defendants were indicted and convicted of the crime of operating a lottery; and, as the basis of this appeal, rely upon bills of exception to the overruling of motions for a new trial and in arrest of judgment.

### Opinion.

The same grounds were urged in both motions, and we shall consider them together. They are:

1. That Act No. 169 of 1894 applies to the operation of a lottery throughout the state, and not to one conducted alone in the parish of Orleans;

2 and 3. That the judgment of conviction was contrary to the law and the evidence; and,

4. That a lottery cannot exist where the game is dependent upon the skill of the player.

The first section of the statute declares:

"That whoever shall establish, set up, draw or run a lottery in this state, for himself or for others, as an individual, partner, shareholder, officer, manager, or agent, shall, upon conviction, be imprisoned, with or without hard labor, not more than one year and fined not exceeding one thousand dollars one-half of such fine to go to the informer securing the conviction, and the other half to go to the city of New Orleans, or parish in which the offense is committed."

[1] There is no doubt but that the evil intended to be reached by Act No. 169 of 1894, as demonstrated by the contemporaneous political history of the state, was a lottery such as was conducted by the famous Louisiana Lottery Company. However, the statute does not define the word "lottery," and we are bound to look elsewhere for its meaning. It seems to have been used in the ordinary sense, as defined by lexicographers and the common law. As defined by Webster's New International Dictionary, it means:

"A scheme for the distribution of prizes by lot or chance; especially a scheme by which one or more are distributed by chance among persons who have paid or promised a consideration for a chance to win them, usually as determined by the numbers on tickets as drawn from a lottery wheel."

Bishop on Statutory Crimes, § 952:

"Lottery is any scheme whereby one, on paying money or other valuable thing to another, becomes entitled to receive from him such a return in value or nothing, as some formula of chance may determine."

See, also, City of Shreveport v. Kahn, 136 La. 371, 67 South. 35, and authorities cited therein.

[2] Hence, from these definitions, it would seem that any scheme for the distribution of a prize or prizes among those who have paid for the privilege of betting, dependent upon chance, is a lottery. In the present case, the scheme is what is known as the "Flashlight Game"; and the lower judge, in his reasons for judgment, describes its operation as follows:

"In this case, taking the evidence before me, both that offered by the state and the defense, it is shown that the device operated by the defendants is susceptible of being controlled by a player, who, in the operation of the game, presses an electric button. That a certain duration of contact of electrical current will cause a certain limited movement of the motor by which the lights are flashed on numbers constructed upon a board upon which there are a number, in some instances, as high as twenty numbers, the player designating the number upon which he bets and which he attempts to cause to be flashed. The proficiency of the player in operating the motor by limiting the contact of electric current might be classed as a game of skill and science if the operation of the game were limited to one player only, but it is shown that there is placed upon a counter in front of the booth a board upon which are numbers corresponding with the numbers upon the flashlight, and that as many persons as there are numbers may play and each play a separate number, each player other than the

one who presses the button taking the chance that their number will be flashed instead of the number played by the operator. This, in my mind, constitutes a lottery."

And we may add that we see little or no difference between this and the element of chance involved in the spinning of the roulette wheel, which, of course, depends upon the speed with which it is started. We imagine that one's ability to pick the number upon which the motor may stop would be just about as good as it would in the case of the wheel.

[3] With reference to the argument that the law applies only to a lottery scheme in which the operations are statewide, we find no merit therein. The law is a general statute applying throughout the state, and there is nothing to indicate that such a condition as contended for was contemplated by the Legislature.

Finding no error, the conviction and sentence are affirmed.

O'NIELL, C. J., is of the opinion that the appeal from the overruling of the motion for new trial does not submit to this court a clear-cut question of law, and that the appeal should be dismissed.